659 A.2d 1014

COMMONWEALTH of Pennsylvania

v.

**Mario GAUSE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 9, 1995.

Filed May 24, 1995.

John W. Packel, Asst. Public Defender, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before TAMILIA, HUDOCK and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from a judgment of sentence of eighteen and-a-half to thirty seven years imprisonment imposed upon appellant after he was convicted of rape, statutory rape, endangering the welfare of a child, and aggravated assault, among other charges. Appellant raises several contentions with regard to the sentence, including that the court failed to

recite the applicable guideline ranges, or to consider them, that the court did not recite sufficient circumstances to justify the substantial departure from the guidelines and that the sentence was manifestly excessive. We vacate and remand for resentencing.

The charges upon which appellant was convicted stem from an incident where he was found to have had non-consensual intercourse with the seven-year-old daughter of his cousin. According to the victim appellant, while supposedly babysitting her, went upstairs to a bedroom to watch television leaving the victim alone downstairs. Not wanting to be alone the victim went upstairs to the same bedroom and began watching TV with appellant. Appellant then handed her a tee shirt and told her to put it on. The child did so and then crawled underneath the covers. Appellant got into bed with the child and pulled down her underpants and began rubbing her thighs. He then inserted his finger and then his penis into her vagina. After he had committed the above acts appellant told the victim not to tell anyone. However, when later returned to her mother the victim told her what had happened.

The victim's mother notified the police who went to investigate the matter. When they came to the residence and told appellant of the allegations, appellant told them they were not going to cuff him. He then grabbed a knife and held it in a menacing manner. Appellant's grandmother interceded at that point and disarmed him. A bench trial was held after which appellant was found guilty of various offenses including rape, statutory rape, and endangering the welfare of a child, all relating to the single act of intercourse with the victim, and two counts of aggravated assault relating to the wielding of the knife at the officers. Appellant, who had no prior criminal history, was sentenced to ten to twenty years for rape; five to ten years for statutory rape, one to two years for endangering the welfare of a child, two and-a-half to five years for each of the aggravated assault charges and for possessing an instrument of crime. All sentences were ordered served consecutively. Upon an oral motion to reconsider sentence, the court

ordered the second aggravated assault and the PIC charge to be served concurrently so that the total was 18½ to 37 years imprisonment. This appeal followed.

 Appellant argues that the sentencing court erred in not stating the guideline ranges upon the record during sentencing and in totally ignoring them. We must agree. The cases are clear that the court must demonstrate that it was not only aware of, but also fully considered, the guidelines in imposing sentence, 42 Pa.C.S.A. § 9721(b), *Commonwealth v. Chesson*, 353 Pa.Super. 255, 509 A.2d 875 (1986), *Commonwealth v. Vinson*, 361 Pa.Super. 526, 522 A.2d 1155 (1987). Contrary to this mandate, nowhere in the sentencing process does the sentencing court recite the guideline ranges for the sentences to be imposed. Rather, the court, obviously repulsed with the crimes that were committed, simply indicated that it did not believe the guidelines contemplated this type of conduct and sentenced the maximum allowed by law in each instance. In so doing, the suggestion that the sentencing court did not consider the guidelines seriously is greatly reinforced. Further, the court's explanation for deviating from the guidelines does not reflect an understanding of their purpose nor the interplay of the various sentences which appellant was exposed to due to the commission of the act in question.[1]

 The primary purpose behind the establishment of sentencing guidelines was to create a system where not only would offenders be properly punished for their transgressions, but also where like offenders would be treated consistently. See, *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453 (1984). As stated by Judge Cavanaugh, writing for the court in *Commonwealth v. Chesson:*

1. We would like to make clear that nothing in this opinion should be deemed as an expression of leniency or a condoning of appellant's behavior. Nor would we wish it thought that we take child sexual abuse lightly. Rather, this opinion should be regarded as an unbiased assessment of the interaction of the guidelines and the sentencing judge in the sentencing process and a vindication of the continuing viability of the sentencing guidelines.

The sentencing guidelines were formulated in order to weave rationality out of an all-too chaotic sentencing system wherein sentences sometimes varied widely from one county to the next, and even from one courtroom to the next in the same county.

*Commonwealth v. Chesson,* 353 Pa.Super. 255, 509 A.2d 875 (1986). Further support of Judge Cavanaugh's premise can be found in quotes from the introductory comments of House Representative Scirica when the enabling legislation was introduced. Representative Scirica stated:

We are amending a Senate bill, and this amendment changes the way we sentence criminals in Pennsylvania. The purpose of the amendment is to make criminal sentences more rational and consistent, to eliminate unwarranted disparity in sentencing, and *to restrict the unfettered discretion we give to sentencing judges.*

Pennsylvania House Journal, 3130 (September 21, 1978). (Emphasis added).

■ To promote the above objectives the sentencing code/guidelines take into consideration the severity or gravity of the offense initially by imposing increasingly greater sentences for increasingly egregious conduct. To wit, an aggravated assault is subject to greater punishment than a simple assault and a rape is subject to greater punishment than a theft offense. Thus, given any particular offense, the guidelines provide the predesignated ranges of punishment for the offense considering the inherent egregiousness of the conduct which is generally associated with the commission of that offense. Consequently, it follows that, unless the particular facts of the case in question are distinguishable from the typical case of that same offense, a sentence in the standard range would be called for.

■ However, recognizing that certain cases of a particular crime may vary from the typical case or may have attendant factors calling for a greater or lesser sentence, the guidelines also provide aggravated and mitigated ranges. Thus, when a case is not of the norm the sentencing judge may

deviate from the standard sentencing range. However, when sentencing in these ranges, the court is required to provide reasons on the record for so doing. Implicit in this methodology is the premise that the court must have valid reasons for sentencing in these ranges, otherwise the recitation of the reasons on the record would serve no real purpose. Further implicit in this methodology is the premise that the court's sentence in light of its reasons is subject to review by appellate courts. To hold otherwise is to relegate the guidelines scheme to a purely voluntary practice, for sentencing courts could simply pay token lip service to the guidelines and then impose any sentence they wished within the legal limitations without any forms of checks and balances.[2]

In the present case, the court states that in its opinion the guidelines did not contemplate conduct as egregious as that which occurred here, that being, the rape of a seven year old child. (Sen.T. p. 9–10) This statement is correct to a degree. The rape statute applies to a victim of any age. It clearly does not contemplate only the rape of victims of tender years. The court may well be justified to consider the tender age of the victim as an aggravating factor allowing a sentence in the

---

2. That sentences are subject to rejection by appellate courts because the reasons stated do not justify the sentence imposed is established in many cases. In *Commonwealth v. Smart*, 387 Pa.Super. 518, 564 A.2d 512 (1989), we stated that the deference extended to the sentencing court did not "necessitate a rubber stamped approval of the sentences imposed by the sentencing court. Appellate review of sentencing matters would become a mockery and a sham if all sentences were routinely affirmed under the guise of discretion of the trial court." Id., 564 A.2d at 514.

Further, in *Commonwealth v. Vinson, supra,* 361 Pa.Super. 526, 522 A.2d 1155, while vacating a sentence imposed which was outside of the guidelines we commented that the reasons offered to support the sentence were "certainly inadequate to justify a sentence which fell outside the guidelines." 361 Pa.Super. 535, 522 A.2d at 1159. A similar comment was made in *Commonwealth v. Chesson, supra,* 353 Pa.Super. 255, 509 A.2d 875, where we stated: [w]e cannot analyze whether there are adequate reasons for the deviation unless it is first apparent that the court was aware of, and considered, the guidelines." 353 Pa.Super. 256, 509 A.2d at 876.

In accord, *Commonwealth v. Simpson*, 353 Pa.Super. 474, 510 A.2d 760 (1986), (per Tamilia, J.), sentence vacated where found to be manifestly excessive and which focused mostly on the nature of the crime committed and which did not consider the need of the public for protection and the rehabilitative needs of the defendant.

aggravated range. However, while the guidelines do not draw distinctions based upon the age of the victim in setting forth the sentencing ranges, in sections containing mandatory minimum sentences the Code recognizes that crimes against a certain class of victim, such as minors and elderly persons, are deserving of greater punishment. Thus, certain crimes committed against minor victims are subject to mandatory minimums as set forth in 42 Pa.C.S.A. § 9718. One such crime is rape, which compels a minimum five year sentence.[3] Perhaps not coincidentally, the sentencing guidelines applicable to the offense of rape provide an aggravated range of 60–75 months imprisonment where the prior record score is 0.

Further, the fact that the victim was a minor subjected appellant to sentences on the charges of statutory rape, and endangering the welfare of a child in addition to the rape charge, which would not be implicated if the rape victim was an adult. Thus, since the crime was against a minor child, appellant will, through the vehicle of mandatory minimums and additional charges, pay the price for victimizing a young child. Thus, it cannot be contended that the sentencing code and guidelines, when considered together, do not contemplate and provide for greater punishment when the victim is of tender years.

In the present case, the court, did not use the victim's tender years as merely an aggravating factor. Rather, the court, in effect, used this single factor to disregard the guidelines altogether, and to impose the maximum sentence on the rape conviction, which was twice that required under § 9718, and to also increase that sentence by another six to twelve years, or sixty percent, by imposing maximum sentences for statutory rape and endangering the welfare of a child. All told, appellant was sentenced to more than three times the mandatory minimum set forth in § 9718 for a rape conviction for the one act of rape against the minor victim. In so doing,

**3.** Although the sentencing court's comments that the guidelines do not contemplate the type of conduct which occurred here is arguably correct as to the rape charge, the same cannot be said of the statutory rape charge which, by definition, can only be committed against a minor victim.

the primary purposes of the guidelines, as outlined above, were completely contravened.

In defense of this sentence the court recites certain factors purportedly making the case so egregious and deserving of the maximum sentence. However, these factors, when considered, are not that uncommon in cases of this type. For instance the court notes that the victim had been entrusted to appellant's care and, after commission of the rape, had told her to keep quiet. As despicable as it may be, these cases often find a perpetrator who was taking care of the child when the incident occurred, or, worse yet, a parent of the child, and often the victims are told not to tell anyone, or even more egregiously, their lives or the lives of someone dear to them are threatened should they tell someone of the abuse. Thus, the present case, although certainly heinous, is not truly distinguishable from the majority of cases of this type and the guidelines should be considered to have taken into account the conduct which occurred here when it set forth the ranges of sentences for the crimes in question.

We would like to emphasize that the above commentary is not offered as a defense of appellant's conduct, nor should it be construed as such. Appellant's conduct is indeed heinous and deserving of substantial punishment. However, it is the role of the legislature to set forth the appropriate punishment for the conduct in question, which it has done through the vehicles of the sentencing code and the guidelines. By wholly ignoring the guideline ranges the sentencing court has, in effect, interjected its own sense of just punishment for that of our legislature's. Although the sentencing court is entrusted with a certain degree of discretion in implementing the guidelines, passage of the guidelines certainly did not contemplate wholesale disregard of them. If the prescribed punishment for the crimes committed here are thought to be insufficient then the appropriate course of action is to implore the legislature to make suitable adjustments to the sentencing code and guidelines. However, the appropriate course of action is not to consciously disregard them and impose a sentence which

appeals to the sentencing judge's own sense of justice. This is precisely what the guidelines were established to prevent.

For the above reasons we vacate the judgment of sentence and remand for resentencing consistent with the principles embodied in the sentencing guidelines and this opinion.

Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.